IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| WEATHERFORD INTERNATIONAL, § | | |
| INC. and WEATHERFORD/LAMB, INC. § | | |
| § | | |
| v. § | NO. 2:09-CV-261-CE | |
| § | | |
| HALLIBURTON ENERGY SERVICES, § | | |
| INC., ET AL § | | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court are defendant Halliburton Energy Services, Inc.'s ("Halliburton") motion for partial summary judgment (Dkt. No. 69) and motion for expedited consideration thereof (Dkt. No. 70). Halliburton argues that the July 21, 2009 Certificate of Correction issued by the PTO, which corrects purported typographical errors in U.S. Patent No. 7,124,831, is invalid as a matter of law. As explained below, the court concludes that there are genuine issues of material fact regarding whether the July 21, 2009 Certificate of Correction is indeed invalid. As such, Halliburton's motion for partial summary judgment is DENIED (Dkt. No. 69). Halliburton's motion for expedited consideration is also DENIED (Dkt. No. 70).

**I.  BACKGROUND**

Plaintiffs Weatherford International, Inc. and Weatherford/Lamb, Inc. (collectively "Weatherford") initiated this infringement suit on August 27, 2009, alleging that Halliburton and General Plastics & Composites, L.P. infringe U.S. Patent Nos. 6,712,153 (the "'153 Patent") and 7,124,831 (the "'831 Patent") – two patents related to down-hole tools used in oil and gas wells. The '153 Patent issued on March 30, 2004. The '831 Patent is a continuation of the '153 Patent, and it issued on October 24, 2006. Upon issuance, Claims 1, 18, and 41 of the '831 Patent included "support ring" limitations reciting as follows:

1

**Claim 1**: a support ring disposed adjacent to the setting ring before the tool is set, wherein the support ring has a smaller outer diameter than an inner diameter of the setting ring;

**Claim 18**: a support ring disposed adjacent to the setting ring before the tool is set, wherein the support ring has a smaller outer diameter than an inner diameter of the setting ring;

**Claim 41**: a support ring disposed adjacent to the selling ring before the tool is set, wherein the support ring has a smaller outer diameter than an inner diameter of the selling ring;

On March 1, 2007, Weatherford, through its attorney William B. Patterson, filed an initial Request for Certificate of Correction, which sought correction of two typographical errors in the '831 Patent. Among other requested changes, Weatherford requested that the PTO change the words "selling" to "setting" in Claim 41. The PTO issued a Certificate of Correction to the '831 Patent on April 10, 2007.

On March 31, 2009, more than two years after issuance of the '831 Patent, Weatherford filed a second Request for Certificate of Correction, asking the PTO to change the word "inner" to "outer" in the description of the "support ring" in Claims 1, 18, and 41 of the '831 Patent. The PTO issued another Certificate of Correction to the '831 Patent on July 21, 2009 (the "Second Certificate"). In the end, Claims 1, 18, and 41 were changed as follows:

**Claim 1**: a support ring disposed adjacent to the setting ring before the tool is set, wherein the support ring has a smaller outer diameter than an ~~inner~~ **outer** diameter of the setting ring;

**Claim 18**: a support ring disposed adjacent to the setting ring before the tool is set, wherein the support ring has a smaller outer diameter than an ~~inner~~ **outer** diameter of the setting ring;

**Claim 41**: a support ring disposed adjacent to the ~~selling~~ **setting** [First Cert. of Corr.] ring before the tool is set, wherein the support ring has a smaller outer diameter than an ~~inner~~ **outer** [Second Cert. of Corr.] diameter of the ~~selling~~ **setting** [First Cert. of Corr.] ring;

On August 26, 2010, Halliburton filed the present motion for partial summary judgment, urging the court to find the Second Certificate invalid as a matter of law. Halliburton contends that the Second Certificate did not correct an error that was clearly evident from the specification, drawings, and prosecution history. Halliburton also contends that it was not clearly evident from the specification, drawings, and prosecution history how the alleged error should appropriately be corrected. As such, Halliburton urges the court to conclude that the Second Certificate is invalid under 35 U.S.C. § 255 and the Federal Circuit's interpretation thereof in *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358 (Fed. Cir. 2001).

## II.  LEGAL STANDARD

Summary judgment is proper if the pleadings and evidence show that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-55 (1986). A "genuine issue" is an issue that "can be resolved only by a finder of fact because…[it]…may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 248. When the summary judgment movant demonstrates the absence of a genuine dispute over any material fact, the burden shifts to the non-movant to show there is a genuine factual issue for trial. *Celotex*, 477 U.S. at 323-24. The court must draw all reasonable inferences in favor of the non-moving party and refrain from making credibility determinations or weighing the evidence. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008).

A patentee who has made "a mistake of a clerical or typographical nature, or of minor character" may apply to the PTO for a "certificate of correction, if the correction does not involve such changes in the patent as would constitute new matter or would require re-

examination." 35 U.S.C. § 255. The Federal Circuit first interpreted this statutory provision in *Superior Fireplace*, in which it held that, "if a certificate of correction broadens a claim, it is only valid if it corrects a 'clerical or typographical' error that would have been clearly evident to one of skill in the art reading the intrinsic evidence." *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions, P.C.*, 482 F.3d 1347, 1353 (Fed. Cir. 2007) (discussing *Superior Fireplace*, 270 F.3d at 1373). Invalidating a certificate of correction for impermissible broadening, therefore, requires clear and convincing proof of two elements: (1) the corrected claims are broader than the original claims; and (2) the presence of the clerical or typographical error, or how to correct that error, is not clearly evident to one of skill in the art. *See id.* ("Since the result is to invalidate a certificate of correction which is part of a duly issued patent, the party seeking invalidation must meet 'the clear and convincing standard of persuasion.'").

## III. DISCUSSION

### a. Step One – Broadening

As just discussed, the first element that must be proved to invalidate the Second Certificate to the '831 Patent is that the corrected claims are broader than the original claims. *Id*. It is undisputed that the corrections made by the Second Certificate broaden the scope of the '831 Patent. As such, the first element is satisfied as a matter of law.

### b. Step Two – Type of Mistake

Under *Superior Fireplace*, the second step in determining whether the Second Certificate is invalid is to determine whether the presence of a clerical or typographical error, or how to correct that error, is *not* clearly evident to one of skill in the art. This element is treated as a factual question. *Id.* In evaluating the second element, the Federal Circuit has explained that there are three categories into which an error might fall. *Superior Fireplace*, 270 F.3d at 1370.

The first category includes "mistakes [that] are immediately apparent and leave no doubt as to what the mistake is." *Id.* at 1370. This category includes "misspellings that leave no doubt as to the word which was intended; 'frane' instead of 'frame,' for example." *Id.* This category also extends to "clerical errors in which the patentee attempts to change every instance of a particular claim term in prosecution but misses one, leaving a claim that, on its face, is nonsensical in light of the specification." *Cent. Admixture*, 482 F.3d at 1354. When a mistake falls in the first category, "one of skill in the art would know from the prosecution history that the patentee had missed one term and would know that the proper correction would be to change that term as well." *Id.* Considering that an error within the first category essentially "makes its own correction known to one of skill in the art, those errors do not raise serious public notice problems and can properly be corrected via a § 255 certificate." *Id.*

In contrast, the second category includes those typographical mistakes that are not, in any way, apparent to the reader. *Id.* And the third category of mistakes includes those where it is apparent that a mistake has been made, but it is unclear what the mistake is. *Id.* With regard to these categories, the Federal Circuit has explained that:

> 'it is not evident to the reader of the public record how to appropriately correct mistakes of the second and third categories,' [] *so those categories of error cannot be repaired via a certificate of correction if the effect would be to broaden the claim*.

*Id.* (quoting *Superior Fireplace*, 270 F.3d at 1370) (emphasis added).

Halliburton argues that the purported mistake corrected by the Second Certificate (i.e., the use of the word "inner" as opposed to "outer") was not clearly evident to one of ordinary skill in the art. Halliburton, therefore, argues that the mistake falls into the second category – namely, a mistake that is not apparent to the reader at all. Considering this, Halliburton argues that the Second Certificate is invalid because the mistake could not properly be corrected under § 255.

5

To support its argument, Halliburton cites to the declaration of its expert, Mr. Gregg Perkin. Mr. Perkin opines that a person of ordinary skill in the art could build the down-hole tool described in the claims of the '831 Patent as issued, including the limitation stating "the support ring has a smaller outer diameter than an inner diameter of the setting ring." As such, Mr. Perkin opines that a person of ordinary skill in the art would not recognize any errors in the language of the '831 Patent as it read prior to the issuance of the Second Certificate. Furthermore, Mr. Perkin notes that there are no misspellings or typographical errors in the claims of the '831 Patent as it read prior to the issuance of the Second Certificate and that the claims read logically at that time.

In response, Weatherford produces the declaration of its expert, Dr. William Fleckenstein. Dr. Fleckenstein opines that, contrary to Mr. Perkin's opinion, it would have been clearly evident to one of ordinary skill in the art that the use of the term "inner diameter" in the phrase "wherein the support ring has a smaller outer diameter than an inner diameter of the setting ring" was an error. According to Dr. Fleckenstein, this error would have been clearly evident for the following reasons:

> (1) the support ring and the setting ring have the same inner diameter in the preferred embodiment, (2) the support ring cannot have a smaller outer diameter than its own inner diameter, (3) the uncorrected claims do not cover the preferred fracplug embodiment, and (4) the downhole tool described and depicted as a preferred embodiment frac-plug in the specification and drawings of the '831 patent cannot have a support ring having a smaller outer diameter than the inner diameter of the setting ring.

Considering Dr. Fleckenstein's declaration, Weatherford argues that there are genuine issues of material fact regarding whether the error corrected by the Second Certificate falls within category two of the *Superior Fireplace* test.

Halliburton next argues that, even if it was clearly evident to one of ordinary skill in the art that there was an error in the claims of the '831 Patent, the Second Certificate is still invalid

6

because the purported error would fall within category three of the *Superior Fireplace* test – i.e., it is apparent that a mistake has been made, but it is unclear what the mistake is and how to fix it. Mr. Perkin opines that, if he were forced to assume there was a clearly evident error in the original claims of the '831 Patent related to the support ring limitation, a person of ordinary skill in the art would not know what the error was or how to correct such an error. Mr. Perkin goes on to detail two possible errors and two possible corrections for those errors.

In response, Weatherford argues that it would have been clearly evident to one of ordinary skill in the art that the error in the claims of the '831 Patent would properly be corrected by substituting "outer diameter" for the erroneous "inner diameter" – just as was done in the Second Certificate. Dr. Fleckenstein argues that the proper way to remedy the mistake was clearly evident to one of ordinary skill in the art because:

> (1) the specification and drawings of the '831 patent describe and depict a preferred embodiment frac-plug having a support ring with a smaller outer diameter than the outer diameter of the setting ring, (2) the corrected language encompasses tools with that configuration, (3) the corrected language encompasses tools where the support ring can fit within the setting tool as described in the specification of the '831 patent, (4) the corrected language describes tools that have a configuration consistent with the purposes of the invention described in the '831 patent, including the ability to be set by applying an axial load from the setting tool to the setting ring, and (5) the uncorrected claim language does not cover the preferred embodiment of figures 5 and 6, a nonsensical result.

Dr. Fleckenstein also explains why, in his opinion, the two possible errors and corrections Mr. Perkin identified are not feasible. As such, Weatherford argues that there are genuine issues of material fact regarding whether the error corrected by the Second Certificate falls within category three of the *Superior Fireplace* test.

Weatherford has produced evidence establishing a genuine issue of material fact as to whether the Second Certificate is invalid. Weatherford's expert, Dr. Fleckenstein, opines that

the error corrected by the Second Certificate does not fall within category two or three of the *Superior Fireplace* test. Rather, Mr. Fleckenstein argues that the error falls within the first category – i.e., "mistakes [that] are immediately apparent and leave no doubt as to what the mistake is." Drawing all reasonable inferences in favor of Weatherford, the court denies Halliburton's motion for partial summary judgment because there are genuine issues of material fact regarding which *Superior Fireplace* category the error corrected by the Second Certificate falls in.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Halliburton's motion for partial summary judgment (Dkt. No. 69) and its motion for expedited consideration thereof (Dkt. No. 70).

SIGNED this 14th day of March, 2011.

_____
CHARLES EVERINGHAM IV
UNITED STATES MAGISTRATE JUDGE